## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**WAYNE B. KNIGHT,** *et al*                    *

                                       *

**Plaintiffs**

                                       *

**v.**                                                  **CIVIL NO. JKB-14-1732**

                                       *

**MANUFACTURERS & TRADERS**
**TRUST CO.,**                             *

**Defendant**                            *

                                       *

*      *      *      *      *      *      *      *      *      *      *      *

## <u>MEMORANDUM</u>

Wayne B. Knight ("Knight") and 2021 Love Point, LLC ("Love Point") brought this suit against Manufacturers and Traders Trust Company ("Defendant") alleging breach of contract, negligent misrepresentation, and breach of a fiduciary duty, and seeking declaratory and injunctive relief. Knight and Love Point later amended their complaint to add a new Plaintiff, Milford Properties, LLC ("Milford," and collectively with Knight and Love Point, "Plaintiffs"). (ECF No. 17.) Now pending before the Court is Plaintiffs' motion to stay (ECF No. 38), Defendant's motion to dismiss (ECF No. 28), Defendant's motion to strike Plaintiffs' jury demand (ECF No. 26), and Plaintiffs' motion to seal (ECF No. 18). For the purposes of these matters, the parties have stipulated that "Maryland law shall govern." (ECF No. 37.) The issues have been briefed,[1] and no hearing is required, Local Rule 105.6. For the reasons explained below, Plaintiffs' motion to stay will be DENIED, Defendant's motion to dismiss will be

---

[1] The motion to stay was briefed in ECF Nos. 38, 41, and 42; the motion to dismiss was briefed in ECF Nos. 28, 32, and 34; the motion to strike Plaintiffs' jury demand was briefed in ECF Nos. 26, 33, and 25; the motion to seal was briefed in ECF Nos. 18 and 24.

GRANTED, Defendant's motion to strike Plaintiffs' jury demand will be DENIED AS MOOT, and Plaintiffs' motion to seal will be DENIED.

## A.    BACKGROUND[2]

This lawsuit, at its core, is a dispute over who should bear the costs and losses associated with two loans in default.   In 2005, a now-defunct financial organization named K Bank extended a series of loans to Plaintiffs for the purchase of a property in Delaware (the "Mispillion Property").  (ECF No. 17 ¶¶ 12-15.)  At the time, the Mispillion Property had an "as is" value of $13.5 million.  (*Id.* ¶ 14.)  The Mispillion Property served as collateral to secure K Bank's loans, and Plaintiffs' other properties in Florida and Maryland served as additional collateral.  (*Id.* ¶ 16.)

Along with the rest of the banking industry, K Bank faced financial hardship in 2007. The Federal Deposit Insurance Corporation ("FDIC") and the Maryland Division of Financial Regulation began to investigate, and found that K Bank was at risk of under-capitalization.  (*Id.* ¶¶ 27-34.)  In 2010, and impliedly in response to the FDIC's investigation, K Bank reappraised the Mispillion Property and found that the property had lost approximately $10 million in value over three years.  (*Id.* ¶¶ 35-38.)

Plaintiffs and K Bank met soon thereafter to discuss "alternative uses for the Mispillion Property," with the mutually-shared hope that re-engineering could revive the property's value. (*Id.* ¶¶ 40-42.)  In a separate meeting, Plaintiffs and K Bank negotiated modifications to the loan agreements.  (*Id.* ¶¶ 45-47.)  These discussions culminated in a March 2010 letter (the "Letter Agreement") that required Knight to post additional collateral.  (*Id.* ¶ 50.)  In return, K Bank reduced Knight's principal owed by $1 million, among other modifications to the loan

---

[2] The facts are recited here as alleged by the Plaintiffs, this being a motion to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  As to those facts most relevant to Plaintiffs' motion to stay, the Court recounts the facts as alleged by Defendant, the non-moving party.  *Id.*

agreements.  (*Id.* ¶ 52.)  K Bank also agreed to the following terms and conditions, which serve as the basis for this lawsuit: "It is [in] our mutual interest to have the [Mispillion] property engineered to obtain the highest and best use as soon as possible, and the Bank agrees to pay for a market feasibility study.  Additionally, the bank will pay fifty percent of the reasonable costs for the engineering."  (ECF No. 32-1 at 2.)

Plaintiffs allege that "[d]uring negotiations leading up to the [Letter Agreement], K Bank specifically agreed that it would take the necessary steps to move forward with the market feasibility study and the re-engineering of the Mispillion Property in addition to paying for it." (ECF No. 17 ¶ 54.)  Crucially, Plaintiffs do not allege that this obligation was reduced to writing. At present, the Mispillion Property has not been subject to a market feasibility study or re-engineering.  (*Id.* ¶¶ 82, 94.)

K Bank's financial condition continued to suffer, and in November 2010 it was placed into receivership by the FDIC.  (*Id.* ¶ 68.)  K Bank's assets—including the two outstanding loans at issue—were purchased by Defendant soon thereafter.  (*Id.* ¶ 69.)  Defendant did not respond to Plaintiffs' queries about the status of a feasibility study (*Id.* ¶¶ 80-83), and eventually Defendant's counsel notified Plaintiffs that the two loans were in default (*Id.* ¶ 90).

Knight and Love Point originally filed this lawsuit in the Circuit Court for Baltimore County, on May 7, 2014.  (ECF No. 41-1 at 6.)  Three weeks later, Defendant removed the action to this Court.  (ECF No. 1.)  On July 14, 2014, Plaintiffs filed an amended complaint, modifying their arguments and adding Milford as a third plaintiff.  (ECF No. 17.)  Plaintiffs now seek to stay this federal action while a related suit proceeds in the Circuit Court for Queen Anne's County (the "Queen Anne's case").

In the time between Plaintiffs' original complaint in the Circuit Court for Baltimore County and Defendant's notice of removal in this Court, Defendant was responsible for a flurry of court filings, all related to the same outstanding loans. Defendant filed a confessed judgment action against Knight and Love Point in the Queen Anne's case (ECF No. 41-1 at 7), filed a suit on one outstanding loan against Knight and Milford in the Superior Court of Sussex County, Delaware (*Id.*), and has taken action to begin foreclosing on Plaintiffs' real estate in Delaware, Maryland, and Florida (*Id.* at 8-9).

In the Queen Anne's case, the state court granted Knight and Love Point's motion to vacate the confessed judgment on October 28, 2014. (*Id.* at 7.) Knight and Love Point have since filed an answer and counterclaims. (ECF Nos. 42, 42-1, and 42-2.) This Court takes judicial notice that Defendant has filed a motion to dismiss those counterclaims, and there is a pending motion to intervene (presumably by Milford). Cir. Ct. Queen Anne's County, No. 17-C-14019056, Doc. 44, filed January 15, 2015, *available at* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=17C14019056&loc=53&det ailLoc=CC. The state court has also issued a scheduling order that sets deadlines for discovery and a settlement conference. *Id.*

This Court now reviews four pending motions in the following order: First, Plaintiffs' motion to stay (ECF No. 38); second, Defendant's motion to dismiss (ECF No. 28); third, Defendant's motion to strike Plaintiffs' jury demand (ECF No. 26); and fourth, Plaintiffs' motion to seal their amended complaint (ECF No. 18).

### B.    PLAINTIFFS' MOTION TO STAY (ECF No. 38)

Plaintiffs invoke the doctrine of *Colorado River* abstention, and ask this Court to stay its proceedings for as long as the Queen Anne's case persists. Federal courts have a "virtually

4

unflagging obligation" to exercise the jurisdiction given to them.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  In fact, they "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not."  *Chase Brexton Health Servs. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)).  Under the *Colorado River* doctrine, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *id.* at 463 (quoting *Colorado River*, 424 U.S. at 813), and is only appropriate "in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings and wise judicial administration . . . clearly favors abstention." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002).  Even if such circumstances do exist, the decision whether to exercise jurisdiction is then committed to the sound discretion of the district court.  *See Chase Brexton*, 411 F.3d at 464.  This case does not present the requisite exceptional circumstances to justify such discretionary abstention.

*Colorado River* abstention analysis begins with a threshold inquiry about whether "parallel" suits are pending in state and federal court.  *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006).  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).

The instant action and the Queen Anne's case present similar, but not identical, parties and issues.  Both lawsuits involve M&T, Knight, and Love Point.  Milford, however, is not a party in the Queen Anne's case.[3]  Both lawsuits also involve similar, but not identical, issues.

---

[3] The Court takes judicial notice that Milford may have a pending motion to intervene in the Queen Anne's case. Cir. Ct. Queen Anne's County, No. 17-C-14019056, Doc. 44, filed January 15, 2015, *available at* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=17C14019056&loc=53&detailLoc=CC.

Knight and Love Point raise counterclaims in the Queen Anne's case for Declaratory Relief, Breach of Contract, Negligent Misrepresentation, Breach of Fiduciary Duty, Injunctive Relief, and Misrepresentation.   (ECF No. 42-2.)   Knight and Love Point's counterclaims appear to mirror those allegations raised in Plaintiffs' federal complaint.   The sole substantive distinction between these lawsuits is that the Queen Anne's case also includes M&T's claim for money owed on the defaulted loans.   The two cases are subtly dissimilar—they do not involve identical parties *or* identical claims—and present a close call on this threshold inquiry.   Still, the Court finds that the instant action and the Queen Anne's case involve *substantially* the same parties litigating *substantially* the same issues, and thus that the two suits are parallel.

Upon a finding of parallel state and federal actions, a court must then balance several factors to determine whether abstention is appropriate.   Although the list is not exclusive, courts usually consider the following six factors: (1) whether the state court has exclusive *in rem* jurisdiction over property involved in the suits; (2) whether the federal forum is convenient; (3) whether abstention would avoid piecemeal litigation; (4) the order in which the state and federal courts obtained jurisdiction and the respective progress made in those courts; (5) whether the merits of the claims are governed by state or federal law; and (6) whether the state forum will adequately protect the parties' rights.   *See Great Am. Ins. Co.*, 468 F.3d at 207-08.   In balancing these factors, the balance is "heavily weighted in favor of the exercise of jurisdiction" in the federal forum.   *Id.* at 207 (internal quotation marks omitted).

Consideration of the six factors does not justify abstention.   Four of the six factors are neutral: there is no *res* at issue, and so neither court has exclusive *in rem* jurisdiction; the federal and state forums are equally convenient; the two cases began within mere weeks of each other

---

Regardless, the Court decides this motion according to the current posture of both cases: Milford is a party in this federal action, and Milford *is not* a party in the Queen Anne's case.

and have made similar progress thus far;[4] and both forums can adequately protect the parties' rights.  Two factors weigh slightly in favor of abstention: all claims are governed by state law, and abstention could avoid piecemeal litigation.  Likewise, resolution of all claims in the federal forum could also avoid piecemeal litigation, especially given the presence of all seemingly interested parties.  Further, even if these two factors weigh slightly in favor of abstention, Plaintiffs have not overcome the balance that begins "heavily weighted in favor of the exercise of jurisdiction."   *Great Am. Ins. Co.*, 468 F.3d at 207.  After considering all six factors, the Court will not exercise its discretion to abstain, and Plaintiffs' motion to stay will be denied.

### C.      DEFENDANT'S MOTION TO DISMISS (ECF No. 28)

Defendant contends that all five counts of Plaintiffs' amended complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

---

[4] This federal action has all relevant parties joined (i.e., Knight, Love Point, Milford, and M&T), but the Court has not yet issued a scheduling order.  Conversely, in the Queen Anne's case the court has set a schedule, but Milford is not a party at present.  On balance, the differences are trivial, and do not raise the "exceptional circumstances" that are required by the *Colorado River* doctrine.

Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### 1. Declaratory Relief/Breach of Contract

Plaintiffs raise separate claims for declaratory relief and breach of contract—Counts I and II—though both claims require the Court to find that Defendant has breached the Letter Agreement. (*See* ECF No. 17 ¶¶ 112, 116.)  Plaintiffs allege that the Letter Agreement required Defendant and K Bank to *obtain* a feasibility study, not just pay for one.  Plaintiffs allege that Defendant breached the agreement by failing to obtain such a study, and the Mispillion Property lost considerable value as a consequence of Defendant's breach.  The Court has carefully considered and interpreted the Letter Agreement, and now finds that K Bank and M&T had no obligation to *obtain* the feasibility study.  Thus, Plaintiffs' claims will be dismissed.

Under Maryland law, a plaintiff suing for breach of contract must show simply "that the defendant had a contractual obligation and that the obligation was breached."  *Mathis v. Hargrove*, 888 A.2d 377, 396 (Md. Ct. Spec. App. 2005).  Maryland utilizes the objective interpretation principle in construing contracts.  *John L. Mattingly Constr. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010).  If the contract's language is unambiguous, then courts "give effect to its plain, ordinary, and usual meaning," taking into consideration the context in which the language is used.  *Id.*  "A contract is ambiguous if, 'when read by a reasonably prudent person, it is susceptible of more than one meaning.' "  *Diamond Point Plaza Ltd. P'Ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 951 (Md. 2007) (quoting *United Servs. v. Riley*, 899 A.2d 819, 833 (Md. 2006)).

The Court first finds that the Letter Agreement is ambiguous as to which party is responsible for obtaining a feasibility study.  Plaintiffs argue that Defendant impliedly agreed to select and hire engineers to conduct the study when K Bank contracted to cover the cost. Defendant counters that banks, traditionally, are mere financiers—they are in the business of paying for things, but not such day-to-day operations.  The Letter Agreement is silent on this question, and a reasonably prudent person could subscribe to contradictory constructions of the text.

Typically, upon a finding that a contract is ambiguous, a court may look to extrinsic evidence to "determine the intentions of the parties to the document."  *Trouard v. Dickey's Barbecue Rests., Inc.*, 2014 WL 3845785, at *7 (D. Md. 2014).  The Letter Agreement, however, falls within the bounds of the Maryland Credit Agreement Act—a statute of frauds for credit agreements—and so the Court's approach must differ.

The Maryland Credit Agreement Act states that "[a] credit agreement is not enforceable by way of action or defense unless it: (1) is in writing; (2) expresses consideration; (3) sets forth the relevant terms and conditions of the agreement; and (4) is signed by the person against whom enforcement is sought."  Maryland Credit Agreement Act, Md. Code Ann., Cts. & Jud. Proc., § 5-408 (West 2014).  The term *Credit Agreement* "includes agreeing to take or not to take certain actions by a financial institution in connection with an existing or prospective credit agreement."  *Id.*  The statute bars consideration of certain extrinsic evidence—particularly evidence that does not appear in writing—in disputes about credit agreements.  In 2010, the Maryland Court of Appeals explained that the statute only bars extrinsic evidence in particular types of claims.  *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867 (Md. 2010).  If a borrower asserts a claim "as a means to defeat directly or attain a modification of the credit agreement . . . ,

the Maryland Credit Agreement Act would be triggered and bar consideration of the underlying allegations and evidentiary proffers . . . ." *Id.* at 876.  Conversely, any claims that "would serve as a set-off against any judgment" on the loans themselves "would not seek thereby to enforce or modify an oral agreement, but would be asserting such claims notwithstanding the implicitly conceded enforceability of the credit agreement," and thus the statute of frauds would not be triggered.  *Id.*

Plaintiffs ask the Court to deny Defendant's motion to dismiss, and to allow discovery for extrinsic evidence that may clarify ambiguities in the Letter Agreement.  Specifically, Plaintiffs allege that prior to drafting the Letter Agreement, K Bank representatives verbally agreed that the bank would obtain a feasibility study.  (ECF No. 17 ¶ 54.)  This evidence would seek to modify the terms of a credit agreement, adding costly requirements that do not appear in writing.[5]  The Maryland Credit Agreement Act bars this exact form of oral modification.  Thus, the Court cannot consider Plaintiffs' alleged extrinsic evidence when interpreting ambiguities in the Letter Agreement.  *See Pease*, 6 A.3d 867; *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495 (D. Md. 2013).

"Ordinarily, when a trial court finds that a contract is ambiguous, 'the meaning of the contract is a question to be determined by the trier of fact.'"  *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 635 (D. Md. 2012) (internal quotation marks omitted).  "But, where there is no relevant extrinsic evidence . . . [ambiguity] will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists."  *Id.* (quoting *Clendenin Bros. v. U.S. Fire. Ins. Co.*, 889 A.2d 387, 394 (Md. 2006)).  This same standard applies here, where there is no admissible extrinsic evidence.

---

[5] If Plaintiffs had alleged that Defendant made such promises *in writing*, the Court would face a radically different question, and the evidence would likely be considered to resolve ambiguities.  Plaintiffs are undone by their reliance on an alleged oral modification.

Taking the facts in the light most favorable to Plaintiffs and construing the ambiguous contract against Defendant—the drafter—the Court still does not find a facially plausible claim for breach of contract.  The contract includes an observation that the parties would like to obtain a market feasibility study.  The contract even implies that at the time it was drafted, all parties *expected* such a study to take place.  But there is no evidence that either Plaintiffs, K Bank, or M&T made an undertaking to obtain that feasibility study.  The contract's silence defeats Plaintiffs' allegation that Defendant breached a contractual obligation, and therefore Count I and II will be dismissed.

### 2.  Negligent Misrepresentation

In Count III, Plaintiffs allege that K Bank negligently misrepresented that it could pay for a feasibility study and re-engineering of the Mispillion Property.  In fact, Plaintiffs allege, K Bank's dire financial status precluded the bank from realistically covering any costs.  The Court need not assess the elements of negligent misrepresentation[6] because a defendant's promise to pay does not give rise to negligent misrepresentation under Maryland law.

> A negligent misrepresentation claim based on statements promissory or predictive in nature is not viable unless the plaintiff puts forward evidence tending to show that the promisor or predictor made the statements with the present intention not to perform.  But, a promise made with the present intention not to perform is perforce, an intentional misrepresentation, not a negligent one, and thus cannot sustain an action for negligent misrepresentation.

*200 N. Gilmor, LLC v. Capital One, Nat. Ass'n.*, 863 F. Supp. 2d 480, 493 (D. Md. 2012) (internal quotation marks omitted); *see also D&G Flooring LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 822 (D. Md. 2004) ("[P]romises are not actionable under a theory of negligent misrepresentation.").

---

[6] See *Griesi v. Atlantic General Hosp. Corp.*, 756 A.2d 548, 553 (Md. 2000) for a listing of the five elements of negligent misrepresentation under Maryland law.

Here, Defendant's alleged promise "to pay for market feasibility studies as well as completely front the costs of the subsequent re-engineering" could be a step down the road toward a fraud claim, but it cannot support a claim of negligent misrepresentation. (ECF No. 17 ¶¶ 121, 124.)  With a mere promise to pay, Plaintiffs have failed to state a claim for negligent misrepresentation.

### 3.   Breach of Fiduciary Duty

Plaintiffs bring a separate claim for breach of a fiduciary duty, but "Maryland courts generally do not recognize breach of fiduciary duty as a standalone tort." *Latty v. St. Joseph's Soc'y Of Sacred Heart, Inc.*, 17 A.3d 155 (Md. 2011).  Indeed, Plaintiffs concede that "[t]he basis for the breach of fiduciary duty claim in this case stems from both the [Letter Agreement] and the actions that give rise to the negligent misrepresentation claim."  (ECF No. 32-1 at 13.) The Court has found that Plaintiffs' claims for breach of contract and negligent misrepresentation both fail, and thus a claim for breach of fiduciary duty has no vehicle (i.e., cause of action) for relief.  The claim will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 4.   Injunctive Relief

Similarly, a claim for injunctive relief is not a standalone cause of action.  *See MCS Servs., Inc. v. Jones*, 2010 WL 3895380, at *1 n.4 (D. Md. 2010) ("Injunctive relief is a remedy, not a separate cause of action . . . .").  Having dismissed all other claims, Plaintiffs' claim for injunctive relief will also be dismissed.

### 5.   Summary

For these reasons, Defendant's motion to dismiss the amended complaint will be granted.

### D.   DEFENDANT'S MOTION TO STRIKE JURY DEMAND (ECF No. 26)

Defendant filed a motion to strike Plaintiffs' jury demand, arguing that Plaintiffs have waived their right to a jury.  (ECF No. 26.)  Defendant's motion is now moot because the Court will be granting Defendant's motion to dismiss the amended complaint.  Thus, Defendant's motion to strike jury demand will be denied.

### E.   PLAINTIFFS' MOTION TO SEAL (ECF No. 18)

Plaintiffs filed a motion to seal the amended complaint (ECF No. 17), arguing that the complaint quotes information that is subject to FDIC confidentiality and protective orders, (ECF No. 18).  There is a "presumption of access accorded to judicial records" that can only be rebutted if "countervailing interests heavily outweigh the public interests in access."  *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  Plaintiffs bear the burden to show that any FDIC confidentiality or protective order presents the "unusual circumstances" necessary to justify sealing their complaint.  *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988).

Plaintiffs fail to cite any caselaw in support of this motion.  Indeed, Plaintiffs simply state—in conclusory terms—that they are bound by protective and confidentiality orders, and that they have no alternative other than to "quote[] language from certain FDIC Confidential Documents, under seal."  (ECF No. 18 ¶¶ 11-12.)  Plaintiffs have not overcome the strong presumption of access to judicial records.  Moreover, this "already strong presumption of access is further strengthened when a document directly affects an adjudication, such as a complaint in a motion to dismiss proceeding, as is the case here."  *Tobacco Tech., Inc. v. Taiga Int'l. N.V.*, 2007 WL 172524, at *1 (D. Md. 2007).  For these reasons, the Court will deny Plaintiffs' motion to seal the amended complaint.

Within fourteen days after this memorandum and accompanying order are docketed, Plaintiffs may take the following actions at their own discretion: a) file a redacted version of the amended complaint, in which case the original unredacted version would remain on the docket under seal; or b) notify the Court that the document is withdrawn.  After fourteen days, if neither a redacted version nor a notice of withdrawal is filed, the Court will unseal the amended complaint.  If Plaintiffs choose to withdraw the amended complaint, the reasons stated in Part C of this memorandum will also serve to dismiss Plaintiffs' original complaint.  (ECF No. 2.)

**F.     CONCLUSION**

Accordingly, an order shall issue DENYING Plaintiffs' motion to stay (ECF No. 38), GRANTING Defendant's motion to dismiss (ECF No. 28), DENYING AS MOOT Defendant's motion to strike Plaintiffs' jury demand (ECF No. 26), and DENYING Plaintiffs' motion to seal (ECF No. 18).

DATED this <u>4th</u> day of February, 2015.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge
